In the Matter of the Petition of the UNION ELEVATED RAILROAD COMPANY OF BROOKLYN to Acquire Title to Lands.

Where a railroad corporation organized under the "Rapid Transit Act" (Chap. 606, Laws of 1875), is authorized by its charter to construct distinct lines of railway "with the usual and necessary  *  *  *  curves, switches," etc., on two streets intersecting each other, it is within the scope of the powers conferred upon the company by the act and its charter to acquire title to, and it may take, by proceedings *in invitum,* lands necessary to effect a junction between the two routes, so as to enable the trains upon one to run upon the other.

The provision of said act (§ 26), which permits the junction of two railroads, comprehends the power to take real estate necessary to effect the connection, and it is not material that the two roads are operated by the same corporation.

While, unless the proposed taking of lands by the law of eminent domain is justified by a purpose or end, permitted or clearly contemplated by the franchise conferred upon a railroad corporation by its charter or the general law, the courts should refuse their aid, the powers of the corporation must be deemed to extend to the accomplishment of legitimate corporate acts, and to whatever may be within the scope of the legislative grant.

It is for the Supreme Court to investigate the facts upon which the corporation claims the right to take private property against the owner's will, and thereupon to decide whether a sufficient ground exists.

*It seems,* if the corporate charter authorizes the proposed taking and the action of the corporation appears to be free from any imputation of unworthy or dishonest motives, the court may not interfere with the

exercise of the power; the only limit to its exercise is the reasonable necessity of the corporation in the discharge of its duty to the public. Where the Supreme Court has granted such an application, and the power to take lands for the corporate purposes is found clearly to exist in the charter and general law, and the purpose stated is one within the contemplation of the legislative act, this court will not interfere with the conclusions of the Supreme Court as to the necessity for taking the land, if reached after due proceedings as prescribed; its review will be confined to those questions which relate to the validity and legality of the proceedings.

(Argued March 19, 1889; decided April 16, 1889.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made January 15, 1889, which affirmed an order of Special Term appointing commissioners to appraise lands sought to be acquired by petitioner in proceedings for their condemnation under the Rapid Transit Act.

The facts, so far as material, are stated in the opinion.

*Jesse Johnson* for appellants. In construing grants to exercise the right of eminent domain, " a strict rather than a liberal construction is the rule." (*In re Poughkeepsie Bridge Co.*, 108 N. Y. 483, 490 ; *In re N. Y. Cable Co.*, 109 id. 32.) The rapid transit act makes the fixing of the routes an integral and separate step in the formation of a company, allowing for that, and that alone, thirty days. (Laws of 1876, chap. 606, §§ 4, 5.) The fact that the curves necessary to connect other routes are expressly provided by the charter negatives the possibility of providing curves for the Hudson avenue route by implication or construction. (*Flanagan* v. *Hollingsworth*, 2 How. [U. S.] 391 ; 108 N. Y. 621; *Hickes* v. *Taffe*, 99 id. 208 ; Potter's Dwarris on Statutes, 220.) The statute imperatively commands the commissioners to locate the route of the proposed railroad ; a failure to do so, fully, fairly and with reasonable certainty and exactness, is a failure fatal to the life of the corporation. (*In re N. Y. Cable Co.*, 104 N. Y. 32; *In re Poughkeepsie Bridge Co.*, 108 id. 492.)

*George W. Wingate* for respondent.    If lands are required
for the proper enjoyment and exercise of the franchise
conferred, and in the performance of the service to the
public assumed by it, they may be taken *in invitum.*    The
only limit to the power is the reasonable necessity of the
corporation in discharging its duty to the public.    (*N. Y. &
H. R. R. Co.* v. *Kip,* 46 N. Y. 546, 552, 553 ; *In re N. Y. C.
& H. R. R. R. Co.,* 77 N. Y. 248, 263.)    The power of com-
panies formed under the Rapid Transit Act (Chap. 606 of the
Laws of 1875), is not restricted to the details enumerated by
the commissioners in respect to the construction of the road or
its appurtenances.    (*In re N. Y. C. R. R. Co.,* 67 Barb. 426,
429 ; *S. C.,* 77 N. Y. 248 ; *N. Y. & H. R. R. Co.* v. *Kip,* 46
id. 546, 552 ; *In re S. I. R. T. Co.,* 103 id. 251, 257, 258, 260 ;
*People* v. *N. Y. C. & H. R. R. R. Co.,* 74 id. 305.)    The
Union had authority to connect the two roads outside its
charter.    (Laws of 1880, chap. 583, § 12 ; Laws of 1875, chaps.
606, 748.)    The company had a discretion to build its road as it
deems its proper operation requires, and that discretion having
been exercised in good faith will not be reviewed upon the
application of a property owner.    (*In re N. Y. C. R. R. Co.,*
77 N. Y. 248.)

GRAY, J.    This proceeding was instituted to acquire certain
real estate, alleged to be needed by the petitioner for the pur-
poses of the operation of its railroad.    It was opposed on
various grounds ; the only one of which we shall consider
being the defendant's objection that the petitioner has no
need for the land, within the purposes of its charter ; and
has no right to take it *in invitum,* within the powers con-
ferred by its charter, or by the provisions of chapter 606 of
the Laws of 1875, commonly known as the Rapid Transit Act.

It was adjudged by the Supreme Court, at Special Term,
that the petitioner requires the real estate in question, in
order to build two tracks on a curve over it, " for the purpose
of connecting its railroad on Hudson avenue with its railroad on
Myrtle avenue, for the purpose of operating the portions of

such railroads, so to be connected together, by running trains over and from one such railroad on to the other and operating trains over such railroads and such tracks, across said property, as over a continuous road, and for a depot and stairs to be used in connection with such curve." It was also adjudged that the petitioner needs the property in question " for those purposes, for the purpose of its incorporation." The court, upon the trial, also found that the acquisition of the land was " dictated by the desire to make the junction between the two roads ; " and that " for the junction of these two roads " the petitioner " requires this land, so it can run trains from one to another." The sole question for us to consider, therefore, is, whether lands can be condemned for railway purposes, under the provisions of the act, where the purpose avowed, or proved, is to effect a junction between two routes located by the commissioners and operated by the same company. The appellant insists that the right cannot be derived from the act or the charter ; and that to concede its existence is, in effect, to allow the petitioner to make a new route, which was not laid down and is not necessary for either railroad. He argues that the act does not, in any event, apply to a connection between railroads belonging to a single corporation. The petitioner was organized under the Rapid Transit Act, and among the routes, upon which it was authorized to construct and operate an elevated railroad, were one upon Myrtle avenue and one upon Hudson avenue, in the city of Brooklyn. It has obtained the consent of the local authorities, and has, by due and appropriate legal proceedings, obtained the order of the General Term of the Supreme Court ; required to be had in lieu of the consents of non-assenting property owners. The two routes cross each other at the junction of the two avenues named, and are distinct lines of railway.

An obvious, if not a conceded, purpose of making the connection between them by this proposed curve is to enable Hudson avenue trains to run upon the Myrtle avenue route, and thus to connect the two lines and both with the New York and

Brooklyn bridge. With the ultimate and real purpose the court need not concern itself, provided it be one which is not forbidden by law. and is one which, within the spirit and letter of the act and charter, conduces to a better operation of the railroad and to the public weal. We have repeatedly held in such proceedings, where the law of eminent domain is appealed to by a corporation, in its endeavor to acquire lands for railroad purposes, *in invitum* the owner, that a strict, rather than a liberal, construction will be given to the chartered powers. Such a rule of construction, manifestly, is the proper one always to be followed, where the property of a citizen is sought to be taken against his consent. The right to take it can be derived only from the state by legislative grant. It does not exist otherwise, and because in derogation of the ordinary rights of private ownership of property, the grant of power will be construed most strictly against the grantee. Although the petitioner was organized for a *quasi* public purpose, its organization was, of course, due to motives of individual interest and gain, and the courts would fail in their duty, if they did not scrutinize closely every corporate act, which invades the private rights of a citizen, and which is sought to be sustained or defended upon the theory of the delegation to the corporation of the right of eminent domain. Much has been said upon this subject of the exercise of the right of eminent domain by private corporations, and it is not necessary to dwell upon it here at any length. The right resides in the state at any time to resume the possession of private property for public use, upon just compensation being made. What it can thus do directly, it may, in the furtherance of a public purpose, delegate the right to do to a corporation, which has been created to subserve some supposed public convenience or necessity, and thus becomes invested with a *quasi* public character. Unless the proposed taking of lands by the law of eminent domain is justified by a purpose, or an end, permitted or clearly contemplated by the powers and franchises conferred upon a corporation by its charter, or the general law, the courts should refuse their aid. The powers of the corporation must be deemed

to extend, however, to the accomplishment of legitimate corporate ends, and to whatever may be found to be within the scope of the legislative grant. The purpose, in creating a railroad corporation, must be deemed to be of a public nature, and the public is interested in its full and fair accomplishment. If a proposed corporate act is in furtherance of the public convenience, and can fairly find a sanction in the charter, it should be upheld. Individual interests must be subservient so far to the public, as to give way before an evident public requirement.

A railroad corporation, though private in the sense that it is managed and operated by private individuals, has that much of a public character, that it is necessary to consider it as an engine capable of the promotion of the public welfare and convenience, as it may be of public injury. It is made subject to the reserved right of supervision by the legislature; who may, where the public good is menaced, suspend the corporate life and control corporate action; within constitutional limitations as to the sanctity of property and contract rights. The power, which it has delegated to the corporation, to exercise the right to retake, upon making just compensation, private property for corporate purposes, in the nature of things, rests in the discretion of the board of directors. When sought to be exercised, the law has required the approval of the Supreme Court to be given, with proper guarantees of a hearing to the parties to be affected. It is for the Supreme Court to investigate the facts, upon which the corporation claims the right to take private property against its owner's will, and, thereupon, to decide whether sufficient cause exists. If the charter seems to authorize the proposed taking, and the action of the directors seems to be free from the influence of unworthy or dishonest motives, I do not see why the courts should interfere with the exercise of their discretion. Granted the power, and no suspicions of the honesty of corporate intentions being maintainable upon the proofs, the court cannot interfere with the exercise of the power. The only limit to its exercise would seem to be

the reasonable necessity of the corporation, in the discharge of its duty to the public.

So it has been held by the courts, in cases where land is sought to be acquired *in invitum* by railroad corporations, organized under the general railroad acts, and the reasoning in such cases is applicable to cases arising under the Rapid Transit act.

In *New York & Harlem Railroad Company* v. *Kip* (46 N. Y. 547), ALLEN, J., delivering the opinion of the court, thus expressed himself : " The public have an interest in the use of a railroad, and in the proper performance of every power within the franchise conferred upon a railroad corporation, and hence every facility needed by such corporation is for public purposes, and whatever is required to enable the corporation to perform its duty to the public is within the principle which permits a delegation of power to it."

The Rapid Transit Act, under which the present railroad company was organized, was passed as a public measure and to supply a supposed existing need in the counties of the state for steam railways, for the transportation of passengers, mails or freight.   So much is indicated from the title and opening section of the act.   Every corporation formed under it has the right to acquire and hold such real estate " as may be necessary to enable it to construct, maintain and operate its railway or railways," and where it cannot agree with the owner, it may institute the condemnation proceedings which are prescribed in the act..   It is there provided that the first move in the proceedings shall be to bring the matter before the Supreme Court, in the particular judicial district, upon the petition of the company, with proof of service of a copy of it upon the parties to be affected.   They are thus given the opportunity of showing cause against the granting of the petition and of disproving the statements and allegations of the petitioner. The court must hear all the proofs and allegations, and, if no sufficient cause is shown against granting the petition, the court is required to appoint commissioners to appraise the compen-

sation to be paid.   Where the party affected by the proceedings, and who deems himself aggrieved by the granting of the application, comes, by the way of appeal, to this court, I think that our review of the proceedings below should be confined to those questions, which relate to their validity and legality.   Where the Supreme Court has granted such an application and we find the power to take lands for the corporate purposes clearly to exist in the charter and general law, and that the purpose stated is one within the contemplation of the legislative act, I do not think we should interfere with the conclusions of the Supreme Court, if reached after due proceedings, as prescribed.   There seems to be an obvious propriety in confining our review to the questions of law, which may arise, and in our not interfering with the determination of the Supreme Court as to the needs of the company for the land.

I see no legal ground upon which this appeal can be sustained.   We have the adjudication of fact in the court below before us, to which I have heretofore referred; and reference to the charter and to the Rapid Transit Act fails to reveal anything in their provisions, which might be considered such a limitation upon their scope as to stamp the purpose avowed here as illegal.   By section 26 of the act, every corporation formed under it is empowered " to cross, intersect, join and unite its railroad with any other railroad before constructed, at any point on its route;   *   *   *   with the necessary turnouts, sidings and switches, and other conveniences in furtherance of the objects of its connections."   With such a general authorization, can we say that it does not apply to a connection between two independent routes of the same corporation ? I think, clearly, such a construction would be unreasonable.

Turning to the charter itself, I think, by language more or less direct, authority is given to construct curves to form connections between lines of railway tracks; whether the purpose be simply for constructing continuous and connected lines of railway, or whether it be simply for the convenience of the traveling public.   The commission, in laying out the

routes, had in view a provision for a general system of rail-road routes and located ten separate routes in Brooklyn, which intersected each other at various points. The petition-er's articles of association embodied the resolutions of the commission, which accompanied their location of rapid transit routes. One of these resolutions provides that the location of the routes designated includes " the right to construct, use and operate in connection therewith the usual and necessary * * * curves, switches and platforms and other appurte-nances incidental to the * * * operation and maintenance of elevated railroads."

By the forty-ninth clause of the general plan, or specifica-tions, decided upon by the commission and forming part of the articles, " authority is given for the construction of such turn-outs, switches, supports, sidings, necessary third track, connections, landing-places, stations, buildings, platforms, stair-ways, etc., together with all other necessary requisites as will conduce to the comfort, safety and convenience of the travel-ing public."

With such provisions, intended to operate upon all corpo-rations organized by the commission under the Rapid Transit act, where is there to be found any limitation upon the power of a company to connect its line of tracks with another distinct line, whether operated by itself, or by another company ; if such a connection is found to conduce to the public welfare or convenience, or, simply, to the more effectual maintenance and operation of the railroad ?   The power given by section 17 of the Rapid Transit Act to a corporation to acquire, *in invitum*, such real estate as may be necessary to enable it " to operate its railway or railways," involves the idea of a possible own-ership by it of more than one line of railway, and that section, and the twenty-sixth section, which permits the junction of two railroads, comprehend a power to take such real estate as may be required to effect the connection between them.

The connection being desired, and the application to con-demn lands for the purpose of making it, after a due hearing of the parties by the Supreme Court, being found to be war-

ranted, I think the individual interests must yield to the corporate requirements, in the furtherance of the public interests, as well as in pursuance of the legislative grant. In the *Kip Case* (46 N. Y. at p. 542), Judge ALLEN said, in considering the provisions of the general railroad act, as amended in 1869, which authorize a railroad company to take any real estate which it may require " for the purposes of its incorporation, or for the purpose of running or operating its road : " " The language of the act is very general and comprehensive. If lands are required for any of the purposes of the incorporation, or for the purpose of operating and running the road, that is in the proper enjoyment and exercise of the franchise conferred, and in the performance of the service to the public assumed by it, they may be taken *in invitum.*" Such language is appropriate in the present case.

I have carefully considered all the points in the brief of the appellant's counsel, but none convince me that we can, or should, interfere with the determination of the Supreme Court, which, at Special and at General Terms, has approved of the petitioner's application.

The order should be affirmed, with costs.

All concur.

Order affirmed.