CENTRAL CROSSTOWN RAILROAD COMPANY, Respondent, *v.* METROPOLITAN STREET RAILWAY COMPANY, Appellant.

*Street railroad — extension of, across a dock in New York city — a right to construct sidings and turnouts will not authorize it — right of another road to enjoin its construction as a nuisance — damages from competition sufficient — effect of a license from the New York dock department.*

A street railroad company, authorized by chapter 160 of the Laws of 1873 to construct and operate its road "through and along West street with double tracks to Christopher St., at the foot of Christopher street, North river. Returning — from the foot of Christopher street, North river; thence through and along Christopher street" (West street running parallel to, and Christopher street at right angles to the North river), may enjoin the construction, across West street and over a piece of land west thereof at the foot of Christopher street, reclaimed about 1874 from the river, of a street railroad by another company having a franchise to construct a road through and along West street, "with the privilege of laying all necessary sidings, turnouts, connections and switches for the proper working and accommodation of the said railroad in any of the above-mentioned streets (in which Christopher street was not included), and of connecting with, running on or crossing all such other railroad tracks as may lie along or across any of said routes, streets or avenues."

A street railroad company which has constructed its railroad in a street, has a right, under section 102 of the Railroad Law, to exclude another company from constructing a road there, and upon showing any special injury and damage to it, may restrain as a public nuisance the unauthorized construction of such other road.

Where such damage will result from competition, and no basis for a computation thereof presents itself, equity may properly intervene by enjoining the operation of the rival road.

A resolution of the dock department, granting permission to a street railroad company to construct a railroad over property under its charge, by its terms a

mere revocable license, cannot authorize a corporation to construct a street railroad over the premises covered by the license, as against the rights of another corporation affected thereby.

INGRAHAM, J., dissented.

APPEAL by the defendant, the Metropolitan Street Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 6th day of November, 1896, upon the decision of the court rendered after a trial at the New York Special Term, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 28th day of October, 1896, granting the plaintiff an extra allowance of $1,000.

*S. B. Clarke*, for the appellant.

*George Hoadly* and *William C. Trull*, for the respondent.

WILLIAMS, J.:

The action was brought to restrain the defendant from constructing and operating a piece of street railroad about 200 feet long from the tracks used by the defendant in West street, opposite Christopher street ferry, to the entrance to such ferry, and to compel the defendant to remove the tracks so far as it has constructed them. The relief sought was afforded by the decision and judgment made and entered. The decision was duly excepted to, and this appeal is taken from the judgment entered thereon.

The grounds of the decision were in brief: (1) That the plaintiff had a franchise to construct and operate a railroad to the ferry, and its tracks were lawfully on the space in question; (2) that the defendant had no franchise to construct or operate a railroad over the space in question; and (3) that the plaintiff would sustain special injury and damage by the construction and operation of such railroad by defendant.

There can be no doubt of the correctness of the conclusion by the trial court as to the first ground. The plaintiff's rights are based upon its ownership of the franchise granted by chapter 160, Laws of 1873, and its interest as lessee of the franchise owned by the Christopher and Tenth Street Railroad Company granted by chapter 301, Laws of 1873. At the time these franchises were

granted West street was seventy feet wide and the Christopher street ferry adjoined the westerly side of West street. In 1874 the ferry house was destroyed by fire, and thereafter a space 180 feet wide from the westerly side of West street at the foot of Christopher street was filled up and paved and a new ferry house was built at the westerly side of this space. The plaintiff and the Christopher and Tenth Street Railroad Company had built their roads described in their franchises in 1873 and 1874 before this change of the ferry house site and the filling in of the intermediate space, and after such change had been made these companies attempted to extend their lines to the entrance of the new ferry house. The Christopher and Tenth Street Railroad Company constructed its extension first, and when the plaintiff began to construct its extension actions were brought by the Christopher and Tenth Street Railroad Company, and by the Attorney-General, in the name of the People, to restrain plaintiff from constructing and operating its extension, and these actions resulted in decisions and judgments establishing the right of the plaintiff to build and operate its extension under its franchise granted by chapter 160 of the Laws of 1873. The extension of this plaintiff was thereupon constructed, and the two extensions have been operated ever since, the plaintiff having prior to the commencement of the present action leased from the Christopher and Tenth Street Railroad Company its franchise and tracks. We must at least adopt the legal principles determined in those cases and follow them, so far as to hold that the plaintiff, at the time the defendant attempted to construct its extension in question, had a franchise under which its lines had been extended and were legally being operated over the space from the easterly side of West street to the entrance to Christopher street ferry.

Indeed, the defendant does not seriously controvert this proposition, but claims that the same legal principles and considerations which determined plaintiff's rights also establish defendant's right to construct and operate its extension over the space in question. The franchise owned by the plaintiff gave the right to construct and operate its road "through and along West street with double tracks to Christopher St., at the foot of Christopher street, North river. Returning — from the foot of Christopher street, North

river; thence through and along Christopher street." And the decisions by the court in the cases above referred to were based upon the ground that the franchise of the plaintiff, by its terms, authorized the company to construct and operate its road not only to. the foot of Christopher street, but to the North river, and it could not do that except by passing over the space in question to the ferry house, on the margin of the river. The defendant's franchise, however, gave it the right to construct and operate its road only along West street, and not to the North river. The defendant claims its right to construct and operate its road over this space to the Christopher street ferry, solely by virtue of the provision of its franchise, " with the privilege of laying all necessary sidings, turnouts, connections and switches for the proper working and accommodation of the said railroad, in any of the above-mentioned streets, and of connecting with, running on or crossing all such other railroad tracks as may lie along or across any of said routes, streets or avenues." (Laws of 1860, chap. 511.) Christopher street was not one of the streets mentioned in the franchise granted; and we fail to see how this clause in the franchise can be regarded as giving authority to construct and operate this piece of road in question, any more than it could be regarded as giving the right to construct and operate any other branch through any other street to connect the main line with any other ferry not lying upon the margin of the streets mentioned in the franchise. This piece of road can, by no proper construction of defendant's franchise, be construed to be a siding or a turnout for the proper working and accommodation of the railroad in any of the streets therein named, or of connecting with or running on or crossing such other railroad tracks as might lie along or across any of said routes, streets or avenues; nor can it be said to be a connection or switch at all. The franchise of defendant did not extend to or include Christopher street at all, unless it might be to cross that street. The plaintiff's franchise *did* cover and include Christopher street, and permitted the plaintiff to construct and operate its road not only along that street but also to the North river. When the defendant's franchise was granted in 1860 no change of the ferry house at the foot of Christopher street was contemplated, and, therefore, the space filled in could not have been intended to be covered by or included in the franchise granted. When plaintiff's franchise was granted in 1873, however, a change

was contemplated in the water front along West street, and the space in question might, therefore, be said to have been within the intention of the Legislature when it gave the right to construct and operate the road not only to the foot of Christopher street, but also to the North river. We do not overlook the consideration suggested by the defendant, that the evident purpose of the defendant's franchise was to connect the ferries and to facilitate the communication between such ferries and other parts of the city, and that many of the ferries on the west side of the city were then adjacent to West street, that West street constituted a wharf or wharves of the city, and that it was no more the design in granting the plaintiff's franchise to carry it *to* the North river as a terminal point, than it was the design in granting the defendant's franchise to carry it along the North river adjacent to the ferries, as its general route, and that the same reasoning which extended plaintiff's franchise across West street and over this space in question to the new ferry house as a terminal point, would also extend plaintiff's franchise over this same space to enable it to reach the same ferry house, along past which, as it then existed, its franchise extended; and, therefore, the construction and operation of the piece of road in question should be considered as a siding, turnout, connection or switch, for the proper working and accommodation of the defendant's road in West street, one of the streets mentioned in its franchise, within the clause of defendant's franchises above quoted. These suggestions are not without a show of reason, but we think they should not be regarded as sufficient to establish defendant's right under its franchise to construct and operate the piece of road in question. By the express words of the plaintiff's franchise it was to extend to the North river. No such express words are found in the defendant's franchise. The decisions in the cases heretofore referred to were based mainly upon this express language. In the absence of those words it could hardly have been held that the plaintiff's franchise extended across West street and over this space in question. We approve of those decisions upon this ground, but we are not willing to go further and hold that the clauses in these acts, conferring incidental rights and powers, such as we have quoted, are sufficient to cover and include the right claimed

by defendant to construct and operate this piece of road in question. Its franchise was to construct and operate its road over and along West street. It could not have been within the design of the Legislature to grant the right to extend the road along streets crossing West street, in either direction, whenever such street should be opened or created in the future, by filling in land and changing the water front, in the improvement of the city and its wharves and ferries.

The resolution by the dock department was, in express terms, a mere revocable license to construct this piece of road. It did not purport to grant any franchise. That department had no power to do so. It was merely a consent by that department, so far as consent might be necessary, but was wholly inadequate to confer any right or authority upon the defendant to construct or operate the road, certainly as against the rights of the plaintiff. It could not deprive the plaintiff of any rights it had in the street. We conclude, therefore, that the trial court was correct in its second conclusion, that the defendant had no franchise to construct or operate its road over the space in question.

The remaining question is whether it appeared that the plaintiff suffered or would suffer such special damage from the construction and operation by the defendant of this piece of road as enabled it to maintain this action to restrain such construction and operation. The unauthorized construction and operation of a railroad in a public street is a public nuisance, but the creation or continuance of a public nuisance is the infringement of a *public* right, and gives a private person no right of action to abate such nuisance, unless its creation or continuance invades his private rights and causes him some special damage, as distinguished from the damage he suffers as one of the community at large. Ordinarily this question arises as to a person who owns real property abutting on the street through which the railroad is constructed and operated, but the question is not materially different in a case like the present where the plaintiff is a railroad company, and has property, not *abutting on* the street, but *lying in the* street itself. It is provided by section 102 of the Railroad Law (Laws of 1890, chap. 565, as amended by Laws of 1892, chap. 676), that " no street surface railroad corporation shall construct, extend or operate its road or tracks in that portion of

any street, avenue, road or highway in which a street surface railroad is or shall be lawfully constructed, except for necessary crossings, * * * without first obtaining the consent of the corporation owning and maintaining the same."

The space in question was a street or highway. Plaintiff's street railroad had been constructed and was being operated therein. Hence the defendant could not construct or operate its road therein, without plaintiff's consent.

The plaintiff was thus placed in the same category practically as a property owner, having property abutting on the street, and could maintain an action to prevent the defendant doing an act which the statute had expressly provided it should not do, unless the plaintiff consented to the doing of it. In such a case, though it may be necessary to show that special injury and damage will be caused to the plaintiff, it is apparent that the nature or extent of such damages is not material. It need not be irreparable, and it was so held in *The Forty-second Street, etc., R. R. Co.* v. *Thirty-fourth Street R. R. Co.* (20 J. & S. [52 N. Y. Super.] 252), which was a case like the present, brought by one railroad company against another, and based upon the same section 102 of the Railroad Act. In that case the action was brought *before* the construction of the road had been *commenced.* Here the action was commenced, it is said, *after* the construction had been *completed,* but before the operation of the road had begun.

The damage to the plaintiff occasioned by the *construction* in the case cited, from the tearing up of the street and the putting down of the tracks, was apparent and was in the future, and was alone clearly ground for maintaining the action. It seems to us, however, that the operating of the road in the street in this case would be some damage to the plaintiff, some interruption of travel to and from the plaintiff's cars, and that sufficient damage thus appears to enable plaintiff to maintain the action. But beyond this it was alleged in the complaint, and substantially admitted in the answer, and is apparent, that the defendant, through its system of transfers and connections, would in the operation of this piece of road come in direct competition with the plaintiff's road over this space in question. And this would manifestly be a source of more or less damage to the plaintiff. It is true that the amount of such damage

could not be ascertained; there would be no basis for computation thereof, and, therefore, if the defendant should be permitted to operate the road, the plaintiff's damages would be irreparable, and plaintiff would have no adequate remedy therefor. This consideration is a sufficient reason for affording equitable relief by way of restraining the operation of the defendant's road.

It seems to us the trial court was correct in its third conclusion, that the plaintiff was in a position to maintain the action.

The decision of the trial court was correct, and the judgment should be affirmed, with costs. ·

VAN BRUNT, P. J., and PATTERSON, J., concurred; INGRAHAM, J., dissented.

INGRAHAM, J. (dissenting):

The judgment appealed from enjoins the defendant "from the construction and operation of a railroad track at or near the foot of Christopher street, North river, in the city of New York, extending in a westerly direction from the tracks of the Hudson River Railroad in West street (as said street was at the time of the enactment of chapter 511 of the Laws of 1860) toward the Christopher street ferry house across said West street, and over any part of the space between West street and the said ferry house," and said judgment further requires the defendant to take up the track and railroad already constructed by it running west of the tracks of the Hudson River Railroad Company in West street.

There are several interesting questions presented upon this appeal which have received much consideration, and which are not free from serious doubt. They arise because of the extremely indefinite language used in granting charters to the various railroad companies whose rights have been acquired either by the plaintiff or the defendant in this action, in connection with the provisions of the General Railroad Act. In construing these various charters we must consider them in relation to the actual condition of the streets, docks and ferries at the time the acts were passed, and then determine what was the intention of the Legislature as to the rights that were to be conferred upon the railroad companies, and the objects to be accomplished by providing for the railroad authorized. The defendant succeeds to the rights granted

in 1860. By chapter 511 of the laws of that year, the Central Park, North and East River Railroad Company acquired a right " to lay, construct, operate and use a railroad with a double or single track as hereinafter provided, and to convey passengers and freight thereon for compensation, through, upon and along the following streets and avenues, route or routes in the city of New York, viz., to commence at the intersection of Tenth avenue and Fifty-ninth street; thence through and along Tenth avenue, with a double track, into West Twelfth street; thence through and along West Twelfth street, with a single track, to Greenwich street; thence from West Twelfth street through and along both West and Greenwich streets, southerly, with a single or double track upon each of said streets to Battery Place," continuing the route around the city upon the east and west side and through Fifty-ninth street. It was further provided in the act that this right to construct and operate a railroad upon these streets was " with the privilege of laying all necessary sidings, turnouts, connections and switches for the proper working and accommodation of the said railroad in any of the above-mentioned streets." This act gave to this railroad, and to the defendant as its successor, the right to construct a double track through West street from West Twelfth street to the Battery, and as an incident to that right was granted " the privilege of laying all necessary sidings, turnouts, connections and switches for the proper working and accommodation of the said railroad " in West street or any part of West street.

Now, let us look at the position of West street in the neighborhood of Christopher street at the time of the passage of the act. West street was a street seventy feet in width, the westerly side being the bulkhead line of the city of New York upon the North river. Against this bulkhead line, opposite the end of Christopher street, a ferry known as the Christopher street ferry, landed its passengers on West street. The entrance to this ferry on the westerly side of West street was about twenty feet from the westerly track used by the defendant's road. Passengers from this ferry, wishing to take the cars of the defendant's road, were thus within about twenty feet of the cars when they left the ferry house; and from the width of the street and the location of the ferry it was not at that time deemed necessary for the accommodation of the defend-

ant's road that a siding, turnout or switch should be constructed at this point. This condition continued until about 1874, when the department of docks, under the authority contained in chapter 574 of the Laws of 1871, as amended by chapter 738 of the Laws of 1872, erected a bulkhead about 180 feet westerly of the westerly side of West street, filling up the intervening place, and a new ferry house was erected upon·the new exterior line, about 200 feet from the westerly track of the defendant's road, and since that time passengers wishing to take the road now operated by the defendant have been compelled to walk this 200 feet and wait in the street for ·a car. It will thus be seen that the proper working and accommodation of the ·defendant's railroad require different sidings, turnouts and switches than were required at the time of the passage of the act incorporating the ·defendant's road. What would be proper and convenient at this point, both for the economical and proper working of the road, and for the accommodation of the public.— those wishing to use the ·defendant's road to convey them from or to this ferry — would be ·quite different, after the construction of this new bulkhead line and the removal of the ferry to its present distance from the defendant's tracks, from what it was before such change. The railroad authorized by this act was not a mere private and commercial corporation solely for private gain, but was a public use. The authority given to it was for use by the· public, and these rights given to it were for the purpose of accommodating the public as well as for the purpose of allowing the corporation to realize a profit from its operation. The public character of the operation of the road authorized by this charter, and the obligation which was imposed upon the grantees of the franchise, should not be lost sight of in determining just what the Legislature intended in granting the power and authority that was granted. Christopher street then ended, and now ends, at the easterly side of West street.

By chapter 301 of the Laws of 1873, the Legislature granted to the Christopher and Tenth Street Ferry Railroad Company the right to build a railroad along Christopher street, which railroad commenced at Christopher street ferry and ran thence through and along Christopher street and other streets to West Tenth street and West street; and thence through and along West street, with a single

track to the Christopher street ferry, the place of beginning, together with all necessary and proper connections, switches, etc. In the same year, by chapter 160 of the Laws of 1873, there was granted to the Central Crosstown Railroad Company a franchise to construct and operate a railroad " through and along West street, with double tracks, to Christopher St., at the foot of Christopher street, North river. Returning — from the foot of Christopher street, North river; thence through and along Christopher street, with a single track, to Greenwich street;" and then through and along Greenwich street to the place of beginning, together with the necessary connections, turnouts, etc. These two franchises have, by various leases and grants, become vested in the plaintiff; and it is not disputed but that the plaintiff, under this authority, has a right to construct the branch or turnout, or whatever it may be called, across this land which has been made between the present exterior bulkhead line and the old bulkhead line on the west side of West street. The defendant has also attempted to construct a piece of road extending from its tracks on West street westerly to a point near the ferry house and about thirty feet east of the bulkhead line at this point; and it is this piece of track, running about 170 feet from its tracks on West street to a point opposite the ferry house, the operation of which the judgment appealed from enjoins, and which such judgment compels the defendant to remove.

Various objections have been taken as to the right of the plaintiff to maintain this action and to the relief granted by the judgment. Without expressing an opinion upon these questions, which are not at all free from doubt, I think the case can be decided solely upon the authority of the defendant to construct this piece of road and to operate it when constructed; and, as I take decidedly a different view from that taken by Mr. Justice WILLIAMS as to this right of the defendant, it is not necessary that I should express an opinion upon the other question presented in the case. It is conceded that since 1874 the plaintiff and its lessors have operated and used this piece of road, connecting its tracks with the ferry house, and that under its charter it had the right, when the ferry house was removed from its position on the westerly side of West street to this point, about 180 feet west of the westerly side of West street, to extend its tracks so as to connect with this ferry. The defendant desires to

do now just what the plaintiff did in 1874. Its right to do so is challenged by the plaintiff, on the ground that, it being unauthorized to so extend this track, the extension is a public nuisance which the plaintiff has the right to ask the court to enjoin, as it sustains special damages not sustained by the public by virtue of such nuisance or unauthorized construction. If, therefore, the defendant, or the railroad, whose rights it has acquired, was authorized to construct this road by its charter, under the circumstances as they existed at the time the city of New York built this new bulkhead line and removed the eastern terminus of the ferry from the westerly side of West street to a point 180 feet west therefrom, I do not suppose that this plaintiff can claim that this right of the defendant has been lost by *laches* or by a failure to construct the road within a reasonable time after such change. If neither the people of the State nor the municipal authorities have taken that objection, I do not suppose that the plaintiff, seeking to protect its private interest, can insist that a right granted by the people should be taken back by the people because not exercised within a reasonable time.

It will be noticed that neither of the charters under which the plaintiff is operating granted any express right to construct a road west of West street. It did authorize the construction of a road to the Christopher street ferry, and through and along Christopher street, but Christopher street then and now ended at the east side of West street, and the right of the plaintiff to construct its road depended upon its right to extend to the Christopher street ferry and the right to go upon and over West street. At the time these acts were passed, Christopher street ferry was at the west side of West street; and when it was subsequently removed, upon the completion of the new bulkhead line, and when the plaintiff built its new tracks to the ferry house, it justified its right to construct this additional piece of track by reason of the removal of the ferry house and the necessity of extending its track so that its road should extend to the new ferry house.

In an action brought by the People, and also in an action between the two railroad companies, both of which are now controlled by the plaintiff, it was determined that the plaintiff, the Central Crosstown Railroad Company, had the right to build its road to the new ferry house. The plaintiff has introduced in evidence that judgment, with

the decision of the court upon which it was based, and I am satisfied to take that decision as an expression of the rules of law which are to govern us in determining just the condition of West street, the strip to the west of West street, and the right that the plaintiff acquired to build its road to the ferry house, and to apply the same rules there established in determining whether or not the defendant is also entitled to the same right or privilege.

In the case between the Christopher and Tenth Street Railroad Company and the Central and Crosstown Railroad Company, the court found that Christopher street ended at the easterly side of West street, and that the space between such easterly side of West street and the North river did not form or constitute any part of Christopher street; that the Christopher street ferry house is located about 250 feet westerly from the easterly side of West street, and that the space between such easterly side of West street and the ferry house now forms a part of the permanent bulkhead or water front; that the defendant (the plaintiff in this action) is entitled, and has a right, to continue its line or track so laid on the northerly side of Christopher street, and upon and across West street, and the space between the old and new bulkhead lines at the foot of Christopher street, to its terminus at the ferry house; and as a conclusion of law that the plaintiff was not entitled to any injunction against the defendant (the plaintiff in this action); and that such defendant may lay, construct and operate two lines of tracks and turntables, according to the findings and conclusions of law. By the judgment it was adjudged that the defendant " may continue its line or tracks, laid upon the northerly side of Christopher street, upon and across West street and the space between the old and new bulkhead lines at the foot of Christopher street, to its terminus at the ferry house." This bulkhead line was extended 180 feet west of the westerly side of West street by the dock department, under the authority conferred by chapter 574 of the Laws of 1871, as amended by chapter 738 of the Laws of 1872. That act is silent as to just what was to be the character of the strip of land made by the extension of the bulkhead line. The act provided that the department of docks should prepare a new plan for the water front of the city, which said plan, when adopted by the commissioners of the sinking fund, shall at the time of such adoption be the sole plan, according to which any

wharf, pier, bulkhead, basin, dock or slip shall be laid out or constructed within the territory or district specified upon such plan, and be the sole plan and authority for solid filling in the waters surrounding the said city, and for extending piers into said waters and erecting bulkheads around said city. It was under this provision that the plans were made by the dock department providing for the construction of this bulkhead and the filling in by solid filling of the space between the westerly side of West street and such bulkhead line. Subsequent to the approval of such plan the bulkhead was built and the space filled in by the dock department of the city. The provisions of this act were incorporated in section 712 of the Consolidation Act (Laws of 1882, chap. 410), but nothing in this section prior to the year 1893 contained any provision as to what use should be made, or who should have control, of this strip of land so made by the construction of the new bulkhead line and the filling in of the strip between West street and such line.

By chapter 397 of the Laws of 1893, section 712 was amended by adding to it a clause providing that whenever the plan determined upon and adopted shall include the widening of an exterior street or avenue, the right to maintain such widened portion or avenue already opened shall reside with the said department of docks, and the street or avenue shall not be a public street, but shall be a marginal wharf, and shall be used in that regard in such manner from time to time as the department of docks shall, by resolution, determine, subject to the approval of the sinking fund commissioners. We have, therefore (West street extending about twenty feet west of the defendant's track), a strip of land under the control of the dock department as a marginal wharf extending about 180 feet westerly from West street, and at that point a ferry house, being the city terminus of a ferry to Hoboken; and we have running upon West street a railroad with a privilege of laying all necessary sidings, turnouts, connections and switches for the proper working and accommodation of its road. We have the fact alleged by the plaintiff that the construction of this piece of road from the defendant's track to the ferry house will greatly accommodate the latter in the operation of its road, and will, by such accommodation, enable it to obtain many passengers, whereby the earning power of the plaintiff's road will be seriously affected. The right of the plaintiff

to maintain the action at all depends upon the fact that by the construction of this piece of railroad track, taken in connection with the system of transfers adopted by the defendant's road, whereby passengers could be transported to any part of the city, the public will be greatly accommodated in traveling by the defendant's line for a single fare. The fact that the competition of the defendant's road with the plaintiff's will seriously injure the plaintiff because the defendant will be able to give to the public better service if it is allowed to build this piece of track, is of itself convincing evidence that such strip of track is necessary for the proper management of the defendant's road and the accommodation of the people, as it certainly is strong evidence to show that it would be a public advantage to allow the people to choose between these two railroads the one that it is most convenient to take to go to different parts of the city. It appears, therefore, that there is an advantage to the public in allowing the defendant to construct its road to the ferry, and that such construction is proper for the working and accommodation of the railroad.

Now, what is it that the defendant proposes to do? It proposes to construct two lines of track about 170 feet in length, the easterly side of which connects with its tracks upon West street. The tracks to be constructed are over West street, and this piece of ground made by the erection of the new bulkhead and the filling in of the strip between West street and said bulkhead about 170 feet, so that its cars can stand to receive passengers when they come from the ferry. Is this the construction of a new railroad? Is it the construction of an extension or branch of an existing railroad, or is it a mere siding, turnout or switch?

By section 91 of the General Railroad Law it is provided that a street surface railroad, or extensions or branches thereof, shall not be built, extended or operated unless the consent of certain property owners and of the local authorities shall have been first obtained; and it is claimed by the plaintiff that the construction of these tracks is a violation of the provisions of this section. This section is a part of the General Railroad Law, being chapter 565 of the Laws of 1890, and it would not, I think, affect the rights granted to an existing railroad corporation, which rights had not been lost at the time of the passage of the act, or, at any rate, at the time the constitutional

amendment was adopted, and the original act passed to enforce it which contained substantially this provision. The act of 1860, granting the franchise now held by this defendant, and under which it is operating its road, has never been repealed. The rights granted by this act are still vested in this defendant corporation. It has a right to operate the railroad franchise granted, and it has the privilege of laying the necessary sidings, turnouts, connections and switches, for the proper working and accommodation of the said railroad in any of the streets mentioned. That right vested in this corporation upon the passage of the General Street Railroad Act in 1884 (Chap. 252), was, by section 18 of that act, continued, and all rights existing in the defendant corporation to construct, extend, operate and maintain its road in accordance with the terms and provisions of its charter, were unaffected by any provision in the act of 1884. Upon the passage of the General Railroad Law (Chap. 565, Laws of 1890) this act of 1884 was repealed; but by section 181 all rights accruing, accrued or acquired under the act of 1884 were preserved. In 1892, by the passage of the General Corporation Law (Laws of 1892, chap. 687), these provisions of the Railroad Law of 1890 were repealed. The same provisions were, however, re-enacted as part of the General Corporation Law, and it was there expressly provided that nothing in that chapter or in the general laws before specified, which included the Railroad Law, should be construed to impair any right or liability which any existing corporation may have by virtue of any special act of the Legislature creating such corporation, unless such special act is repealed by the chapter. The utmost care is taken by the Legislature, all through the various laws which have been enacted to revise the general laws of the State, to protect all vested rights and the powers granted to existing corporations, and I think it clear that, under these provisions, the right given to this defendant corporation by its charter to construct the necessary sidings, turnouts or switches has been preserved and that nothing in either the General Railroad Law or the General Corporation Law impairs such right or authority granted the defendant corporation by its charter.

The authorities in this State are uniform in holding that a right once given a railroad corporation to construct necessary tracks, switches and sidings is a continuing right to be exercised by the

road as required by the development of its business for the convenience of the public. (See *In re N. Y. C. & H. R. R. R. Co.* v. *M. G. L. Co.*, 63 N. Y. 330, and cases there cited.) And in *Matter of U. E. R. R. Co. of Brooklyn* (113 N. Y. 278), in determining the powers conferred upon a railroad company in the construction of its road, and the incidental powers granted to it to construct the necessary turnouts, sidings and switches and other conveniences, attention is called to the fact that " a railroad corporation, though private in the sense that it is managed and operated by private individuals, has that much of a public character that it is necessary to consider it as an engine capable of the promotion of the public welfare and convenience as it may be of public injury.   *   *   *   If the charter seems to authorize the proposed taking, and the action of the directors seems to be free from the influence of unworthy or dishonest motives, I do not see why the courts should interfere with the exercise of their discretion;" and then in determining what incidental powers were granted to the corporation by the charter, it was held that authority to construct the necessary turnouts, sidings and switches authorized the construction of a curve to form connections between lines of railway track, " whether the purpose be simply for constructing continuous and connected lines of railway, or whether it be simply for the convenience of the traveling public." It seems to me quite clear that the authority granted to the defendant by its charter in 1860, to construct the necessary sidings, turnouts and switches necessary for the proper operation and maintenance of its road and the accommodation of the public, has not been affected by subsequent legislation; and that if this piece of track that the defendant has now constructed can be said to be authorized by the charter, it is not a nuisance that would justify one incidentally injured by the exercise of the right in asking a court of equity to remove the track thus constructed.

The material question, therefore, that must decide the right of this defendant to build this piece of track, must depend upon whether such track can be said to be a street surface railroad, or an extension or branch thereof, or whether it can be said to be a siding, turnout or switch of this existing street railroad. No authority is given in the charter to this company to erect extensions or branches of this road in other streets than those mentioned in the charter, or over property

or other routes than those expressly prescribed; and if this is an extension or branch of this railroad, it is clearly prohibited, both as unauthorized by its charter and as in violation of section 91 of the Railroad Law. That act, however, does not apply if this piece of track is simply a siding, turnout or switch, and thus within the power and authority granted the corporation by its charter. This question as to just what this proposed track can be called is largely one of fact depending upon the circumstances shown to exist in this case. Can a piece of track less than 200 feet in length, the object of which is to permit cars to stand near a ferry, to accommodate the passengers coming from the ferry, and connecting with a street railroad, be called an extension or branch of the road? It seems to me clear that it is not. The words used as applicable to an extension or branch of an existing railroad line ordinarily mean something far more than such a piece of track. It seems to me that this comes clearly within a turnout or siding of an existing road, which, by its charter, the defendant was authorized to construct. When it became convenient for the proper management of this road to run across to this ferry, so that they should stop there and commence their route from that point, it became necessary that some turnout should be constructed so that the car when standing at the end of its route should not interrupt the other cars upon the track that proceeded from one end of the road to the other. Is this piece of track anything more than a turnout to allow its cars to stand without obstructing the main line, or within the same general definition of the use of this piece of track? Could it not be said to be a siding, that is, a piece of track built on the side of the main line for its cars waiting for passengers, so that while thus waiting the traffic upon its main line would not be obstructed? If the ferry house had remained at its original position prior to 1870, and a track had been constructed in West street to allow its cars to stop and wait for passengers without obstructing the main line, it seems to me clear that such a construction would neither be a branch or extension of the road, but a mere siding or turnout. It seems to me equally clear that the mere extension of this track upon this strip of land between West street and the new bulkhead line does not render it any the less a turnout or siding, than it would have been if it had been confined to West street as originally laid out.

We are not now dealing with an objection on behalf of the People to any act that a corporation created by law may be said to have done in excess of its corporate powers, nor are we dealing with an objection taken by the city of New York to the use by this corporation of the city property without the consent of the city. This action proceeds upon the theory that the defendant, by the building of this track, is maintaining a public nuisance by the obstruction, without authority of law, of a public highway, and that in consequence of the special injury inflicted upon this plaintiff, it has a right to ask a court of equity to abate such nuisance, or by its injunction to restrain its continuance. If it appears that the only public street that this defendant proposes to use in the construction of this turnout or siding is the original West street, and that by its charter the defendant is authorized to construct such a siding or turnout in West street, it is clear that the proposed act is not a nuisance, and that in this action the plaintiff is not entitled to the aid of the court to restrain its continuance. By section 712 of the Consolidation Act, as amended in 1893, before cited, it is expressly provided " but the street or avenue so widened to the extent of the part so widened, or such new street or avenue opened under this plan, shall not be a public street, but shall be a marginal wharf, and shall be used in that regard in such manner from time to time as the department of docks shall, by resolution, determine." The land upon which it is proposed to construct this track west of the westerly side of West street, is not, therefore, a public street, and the construction upon it of this road cannot be said to be a nuisance which the court would be justified in restraining at the suit of a competing road, whose only injury would consist of the competition in the business that is carried on at this place; and so the prohibition contained in section 102 of the Railroad Law could not apply, as by the provisions of the statute before cited nothing in this General Railroad Law is to affect the right vested by its charter in this defendant corporation at the time of the passage of that act, and the right to construct this turnout or siding was, as we have seen, then vested in the railroad company. But the prohibition contained in this section of the Railroad Law, by which the railroad company is prohibited from constructing, extending or operating its road or tracks in that portion of any street, avenue, road or high-

way in which the street surface railroad is or shall be lawfully constructed, without first obtaining the consent of the corporation owning and maintaining the same, does not here apply, because, with the exception of this twenty feet in West street, in which, under its charter, this defendant is expressly authorized to construct a siding or turnout, the defendant does not propose to extend its road, or build its switch or turnout in any portion of any "street, avenue, road or highway." By the express provisions of section 712 of the Consolidation Act, as before stated, the strip of land between West street and the new bulkhead line is not a public road or highway.

The plaintiff's case shows with great distinctness the advantage that the construction of this siding or turnout will be to the public. By it passengers coming from the ferry can take a car standing upon this siding or turnout and be carried to any part of the city by a system of transfers over the defendant's other lines of railway. The plaintiff claims that this public benefit is unlawful, unauthorized by law, and is a nuisance which should be enjoined, and that it will be a special injury to the plaintiff corporation, because, by reason of the superior advantages that the defendant's road offers to the public, the passengers will be diverted from the plaintiff's railroad. The court is thus asked to enjoin what will be a public benefit because it is a public nuisance, and because it is such a public benefit it will injure the plaintiff's business.

For a court of equity, in the exercise of its judicial discretion, to grant such an injunction upon the suit of a competing corporation, so as to compel passengers to take its cars or travel upon its line in preference to the line which furnished greater facilities, is, I think, an unauthorized use by the court of the power vested in it.

An examination of the case has satisfied me that the construction of the proposed track by the defendant is within the authority granted to it by its charter; that it occupies no part of a public street or highway which it was not expressly authorized to occupy, and that the plaintiff was not entitled to an injunction restraining the construction or use of the track to be constructed by the defendant corporation.

It follows, therefore, that the judgment should be reversed and the complaint dismissed, with costs here and in the court below.

Judgment affirmed, with costs.