(48 Misc. Rep. 91.)

ELECTRIC CITY RY. CO. v. CITY OF NIAGARA FALLS et al.

(Supreme Court, Special Term, Erie County.    August 3, 1905.)

1. STREET RAILROADS — FRANCHISE — CONFLICTING GRANTS — CITY COUNCIL—
POWERS.

In the absence of statutory restriction, a city council has power to grant a right to construct a street railroad over substantially the same route as that embraced within the franchise of another corporation.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, § 47.]

2. SAME—STATUTES—CONSENT—CONDITIONS.

Railroad Law, § 102 (Laws 1892, p. 1405, c. 676), provides that no street surface railroad corporation shall construct, extend, or operate its road or tracks in that portion of any street, avenue, road, or highway in which a street surface railroad is or shall be lawfully constructed, except for necessary crossings, without first obtaining the consent of the corporation owning or maintaining the same. *Held*, that the consent of an existing railroad to the use of streets occupied by it by a competing company was not a condition precedent to the right of such competing company to obtain the consent of local authorities to the use of such streets.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, § 47.]

Suit by the Electric City Railway Company against the city of Niagara Falls and others to restrain the city and its common council from granting a consent to the International Railway Company to construct certain extensions along many of the streets embraced in complainant's franchise.    Application denied.

Patrick J. King and Martin Carey, for plaintiff.

Franklin J. McKenna, for the city of Niagara Falls.

Morris J. Cohn, appearing specially for the International Railway Company.

Eugene Cary, George P. Keating, and Geo. W. Knox, for defendant aldermen.

KENEFICK, J.    The plaintiff has a franchise to construct, maintain, and operate a street surface railroad along certain streets in the city of Niagara Falls, and is now actually engaged in the work of construction.    The International Railway Company has applied to the common council of said city for consent to construct, maintain, and operate extensions of its street surface railroad along many of the streets embraced within the franchise heretofore granted to the plaintiff, and a committee of said council to which such application was referred has adopted a report recommending that such consent be given.    The council was about to act on the report when this action was commenced to secure an injunction perpetually restraininig the defendants from granting such consent.    A temporary injunction was granted ex parte, with an order to show cause why such restraint should not continue during the pendency of the action.

The right to injunctive relief rests upon the claim that certain members of the council have entered into a corrupt agreement with the International Railway Company to grant the consent applied for, and upon the further claim that the council has no power to

grant a consent for the construction of a street surface railroad over all or any part of the coincident route of the plaintiff.

The moving papers present no tangible proof of the corrupt agreement charged, except an admission that such an agreement exists, claimed to have been made by the defendant Ohrt to one of the plaintiff's directors. Ohrt denies making such admission, and all of the accused aldermen, as well as the officials of the International Railway Company, deny that any such agreement exists or was ever made. The proof offered to establish the charge of a corrupt agreement is altogether too shadowy and unsubstantial to warrant the interposition of the court to restrain even temporarily the official action of the municipal authorities.

The further claim that the common council has no power to make the proposed grant to construct a railroad over substantially the same route embraced within the plaintiff's franchise is not so easily disposed of. In the grant made to the plaintiff by the municipal authorities of the city, there is nothing which expressly or by implication confers an exclusive right upon the plaintiff to occupy the streets therein named with a street railroad. The railroad law does not in terms declare that a municipality may not grant its consent to one company to construct, maintain, and operate a street surface railroad along streets embraced in a franchise previously granted to another company, nor can such prohibition be reasonably implied from any of the provisions of said law. Indeed, section 102 (Laws 1892, p. 1405, c. 676), hereinafter quoted, imports that the municipality has such power. All rights, therefore, not expressly granted, are reserved, and one of the rights thus reserved is the granting of a franchise to another corporation to carry on the same business in the same territory. Skaneateles v. Skaneateles, 161 N. Y. 154, 55 N. E. 562, 46 L. R. A. 687, affirmed 184 U. S. 354, 22 Sup. Ct. 400, 46 L. Ed. 585. In that case the Court of Appeals said (page 163 of 161 N. Y., page 564 of 55 N. E. [46 L. R. A. 687]):

"Public grants are to be construed so as to prevent rights from being taken from the public or given to a corporation, beyond those which the words of the grant, by their ordinary construction, convey."

It was urged in that case, as it is here, that the granting of a franchise to another corporation would diminish the value of the plaintiff's grant, but in passing upon this claim the Supreme Court of the United States says (page 367 of 184 U. S., page 405 of 22 Sup. Ct. [46 L. Ed. 585]):

"Its [the village's] action may have seriously impaired the value of the plaintiff's property, but it has taken none of it; and such decrease in value caused by the village exercising its right to build and operate its own plant furnishes, under the facts in this case, no foundation for the plaintiff's claim. * * * The property of the plaintiff remains wholly untouched. Its value has decreased, because the village no longer takes water from it, and the inhabitants will probably also take their supply from the village works; but the plaintiff's property has not been taken, as that term is understood in constitutional law. What the village ought to do in the moral aspect of the case is, of course, not a question for us to determine."

It appears reasonably clear, therefore, that the municipal authorities have the power to make the proposed grant, unless the consent

of the plaintiff is required as a condition precedent, under section 102 of the railroad law (Laws 1892, p. 1405, c. 676). That section reads:

"No street surface railroad corporation shall construct, extend or operate its road or tracks in that portion of any street, avenue, road or highway in which a street surface railroad is or shall be lawfully constructed except for necessary crossings  *  *  *  without first obtaining the consent of the corporation owning or maintaining the same."

This section was originally enacted by chapter 252, p. 309, of the Laws of 1884. It was the subject of judicial consideration in the Matter of 34th Street R. Co., 102 N. Y. 343, 7 N. E. 172. In that case the railroad company applied for the appointment of commissioners to determine whether the railroad ought to be constructed or operated, in lieu of the consent of the property owners. The property owners resisted the application upon the ground that the proposed route was coincident in part with routes of existing surface street railroads in actual operation, whose consent to the construction of the petitioners' road had not been obtained, but had been refused. The court held, in substance, that the franchise was perfected when the consent of the local authorities and the consent of the abutting property owners, or, in lieu of the latter, the determination of commissioners, confirmed by the court, was obtained, and that the consent of the existing road provided for by section 102 was not a condition precedent to obtaining the determination of commissioners in lieu of the abutting property owners' consent. In discussing the provision above quoted, requiring the consent of the existing road, the court says (page 351 of 102 N. Y., page 176 of 7 N. E.):

"The consent simply meets one of the conditions prescribed by the statute upon which the right of the company to construct and operate its road depends.  *  *  *  A failure to obtain such consent simply puts in abeyance its right to proceed with the construction of the proposed road until the obstruction is removed, and this precise situation was within the contemplation of the Legislature when the act was passed."

And again, at page 354 of 102 N. Y., page 178 of 7 N. E., the court says:

"The consent of other railroad companies having coincident routes is another and independent condition for which the statute provides no alternative or substitute. Nor does it prescribe the order in which the several consents shall be obtained.  *  *  *  But the fact that the other companies had prior to the application refused the consent does not show that the appointment of commissioners would be a vain and useless proceeding. The decision of the competing roads was, in its nature, revocable. The question on their part was one of prudence and policy, and it is quite conceivable that circumstances might subsequently arise which would lead to a reversal of the prior decision, and to the giving of a consent which had been previously withheld."

It seems to me that this case is decisive of the proposition under discussion. If the consent of the existing railroad is not a condition precedent to the consent of the property owners or its alternative, it must necessarily follow that the consent of the existing road is not a condition precedent to obtaining the consent of the local authorities. That a street surface railroad already constructed has the right to maintain an action against another company to restrain

it from constructing its road along the former's route without its consent is sustained by these authorities, but they afford no support for the restraint of municipal action: 42d St. R. Co. v. 34th St. R. Co., 52 N. Y. Super. Ct. 252; N. Y. Cable Co. v. Chambers St. R. Co., 40 Hun, 29; Indianapolis Cable St. Ry. Co. v. Citizens' Street Railroad Co. (Ind.) 24 N. E. 1054, 26 N. E. 893, 8 L. R. A. 539; Central Crosstown R. Co. v. Met. R. Co., 16 App. Div. 229, 44 N. Y. Supp. 752; Booth on Street Railways, § 122.

Whether the municipal authorities of the city of Niagara Falls should make the proposed grant to the International Railway Company, in view of the grant heretofore made to the plaintiff, is a matter resting in their sound discretion, and the court possesses no power to interfere with such discretion under the facts presented in this case. The court is concerned with the power of the municipal authorities to make the grant, not with the wisdom of their action.

The application to continue the injunction is denied, and the injunction heretofore granted is vacated.