The court decided in favor of the petitioner, and delivered the following opinion:
Cullen, J.
•This is a proceeding to condemn the easement of the respondent in the street adjacent to and in front of his property, so far as that easement is impaired by the construction and maintenance of the petitioner’s railroad and station. The right of the petitioner to institute these proceedings is challenged on several grounds.
The most serious question in the case is whether the petitioner’s franchise has not determined and lapsed. The petitioner is the successor of the Brooklyn Elevated Silent Safety Railway Company, whose rights and franchises it has acquired through a foreclosure of a mortgage. The latter company was incorporated by chap. 585 of the laws of 1874, and authorized to construct and operate an elevated railroad over a defined route from the Bridge to Woodhaven. By § 12 of the Act, “ The company hereby created shall commence the construction *1067 of their road within two years from the passage of this Act, and shall complete it within three years thereafter, and failing therein shall forfeit the rights acquired by them under this act.” The company, as I find, did commence work within two years after the passage of the act, but the road was not completed and operated from the Bridge to Schenck avenue until December, 1885. The part of the road lying to the west and north of Grates avenue, which includes the road in front of the respondent’s premises, was completed and operated in May of the same year. It appears by the section just cited, that the company was given five years, from the passage of the act, to complete its railroad. That would be till May 26, 1879. This term was extended for two successive periods of two years each by two statutes: the first, chap. 850 of the Laws of 1879 ; the second, chap. 338 of the Laws of 1881. These two statutes are general acts, each extending for a term of two years from its date the time for the construction of the roads of all railroad companies theretofore organized. By this legislation the time for the completion of the petitioner’s railroad was extended to May 24, 1883. No law extending the time further was passed until 1885. In 1880, chap. 459, an act was passed restricting the right of the company to lay their rails easterly of Schenck avenue to Woodhaven to the laying of rails upon the surface during the period of five years after the act. By § 2 it was provided that nothing therein contained should prejudice or affect the rights of the company as respects the residue of its route. The statute of 1885 chap. 539, amended the act of 1880 so as to extend the restriction to laying rails upon the surface for the further period of five years from the passage of that act, and it amended the second section of the act of 1880 so as to read: “.Section 2. Nothing herein contained shall prejudice the rights of said company as respects the residue of its route, its time to complete the construction of which residue is extended during said period of three years.” It may be doubted what period of three years was intended by the language of this section, but in the view I take of the law applicable to this subject, it is not very material.
The statutory time for the completion of the road had expired in May, 1883. If the franchise to build the road was then lost by the company, it could not be revived by subsequent legislation. In the Matter of the Brooklyn, Winfield & Newton Railroad, 75 N. Y., 335, the corporation had lost its franchise and its corporate existence by failure to begin or complete its road. Subsequent thereto the legislature passed an act to extend the time of the corporation to finish and operate its road for five years from the passage of the act. It was held that the statute was unconstitutional, and that while the legislature could waive a cause of forfeiture, it could not grant franchises and powers which had been wholly extinguished or lost; that such extension was equivalent to a new grant of the right to lay down a railroad, which grant was prohibited by the constitutional amendment of 1874. If the franchise was gone in 1883, the extension of 1885 was nugatory. If not lost, the statute would doubtless operate as a *1068 waiver of any cause of forfeiture it might have previously approved. It seems to me, therefore, that the whole question turns on the point whether the provisions of section 12 forfeited ex proprio vigore the franchises of the company in case of failure on its part, or only created a cause of forfeiture. In the case of Brooklyn, Newtown & Winfield Railroad, 75 N. Y., 335, it was held that a corporation organized under the general railroad act on failure to comply with the terms of that act as to the time for the beginning and completion of its road, ipso facto ceased to be a corporation and lost its franchises, and that no judicial action was necessary for that • purpose. The language of the act in this regard is, “its corporate existence and powers shall cease.” In the case of The Brooklyn Steam Transit Company v. The City of Brooklyn, the corporation was organized under a special act, which provided that in case of failure on the part of the company to construct one mile of its road within three years, “then and in that case this act and all the powers, rights and franchises herein and hereby granted shall be deemed forfeited and terminated.” It was there held that the statute executed itself, and that failure to build the mile of road within the time specified absolutely ended the corporation without the intervention of judicial action. But in the case of The Kings County Elevated Railroad, 105 N. Y., 97; 7 N. Y. State Rep., 186, the articles of association, following the statutory direction to that effect, prescribed that in case of failure to complete the roads within the time specified, the rights and franchises acquired should be released and forfeited to the supervisors of the county of Kings. It was there held that by these provisions only a cause of forfeiture was created, and that the default itself did not operate to divest the corporation of the franchises without suit brought for that purpose. I am inclined to the opinion, though not without hesitation, that this case falls within the principle of the Kings County Elevated. The general rule is conceded by all the authorities, that a cause of forfeiture does not per se work a forfeiture without judicial determination unless it is apparent from the language of the statute that it was intended that the statute should execute itself. The language in the general railroad act which was held indicative of such intent was as to a corporation in default that “its corporate existence shall cease.” .The language of the Steam Transit Company’s charter was “then this act and all powers, rights and franchises herein and thereby granted shall be deemed forfeited and terminated.” The language in the charter of the petitioner varies from that used in these acts. Failing to commence and complete the road as provided, the company “is to forfeit the rights acquired by them under this act,” but it is not provided that the corporation itself shall cease, nor is it provided that the company shall be “deemed” or held to a forfeit of the franchise, but simply that it shall so forfeit. The language of the forfeiture is substantially the same as that found in the case of the The Kings County Elevated Railroad, and though there were features in that case wanting in this, which added force to the argument that a cause of forfeiture only was intended to be created, I think *1069 the rule there held would apply here. The petitioner therefore cannot be attacked in this proceeding for its default.
It is next objected that the structure maintained by the petitioner is not such as it was authorized by statute to build. If this objection be founded on that fact, I think it one of which the respondent may avail himself, for the only right the petitioner has is to condemn the easement for a lawful use. I think, however, the objection is not well founded. Section 5 of the act of incorporation is as follows: ' “ The said Elevated Bailway shall he constructed as follows, namely: Iron columns shall be placed ■on each side of the street, avenue or roadway, on a line with the curbstones, said columns to be firmly bolted to concrete foundations of suitable size and shape to insure perfect firmness in all cases; said foundations and the location of them to be subject to the approval of the chief engineer of the board of city works of the city of Brooklyn, or such officer as shall sustain that relation to the city government. Iron girders not more than 36 feet in length shall be placed across the streets and avenues, and be properly attached to the tops of said columns.” In 1875, chap. ■422, this section was amended so as to read: “ The said Elevated Bailway shall be constructed as follows, namely: Iron girders shall be placed on each side of the streets, avenues or roadways, as near as practicable on a line parallel with the curbstones, said columns to be firmly bolted to concrete foundations of suitable size and shape to insure perfect firmness in all cases, subject”to the approval of the chief engineer of the board of city works of the city of Brooklyn, or such officer as shall sustain that relation to the city government. Iron girders shall be placed above the streets and avenues and be properly attached to the tops of said columns.” The railroad as constructed by the petitioner has its line of columns in the street, there being a distance of 8 feet and 8 inches between the curb and the foundation of the nearest column, and 8 feet and 4 inches between the foundations of the two lines of columns. _ This location is not in accord with the plan prescribed in the act of 1874, for by that act the columns were to be “on a line with the curbstones.” But the amendment of 1875 modified and changed the previous plan. Instead of being on the line of curbstones the columns are to be “as nearly as practicable on a line parallel with the curbstones.” By the act of 1874 the girders were to be placed across the streets; by that of 1875, above the streets. This marked change of phraseology denotes an intention to change the plan of structure. If the columns are in a line parallel to the curb, it cannot be in the line of the curb. The “near as practicable” relates not to the curb, but to the parallelism of the line of the columns with that of the curb. After the amendment the location ■of the line of columns is not prescribed, save that it must where-ever located be parallel to the curb, and also that it be subject to the approval of the city engineer. That this was the intention of the act is further made evident by the substitution of the direction “above the streets” instead of “across the streets.” The ■context of the whole section shows no change in the character of *1070 the structure itself. There were to be both cr.oss-girders and longitudinal girders. I can see no reason for the change of the word “across" into “above,” except that it was contemplated that the columns might be placed in the street away from the curb. The term “across” would properly denote the position of the girders when the whole width of the street was to be spanned by the structure, but it would not be applicable where it was to be-extended over only a part*of the street:
Edward M. Shepard and Nelson S. Spencer, for app’lt; Eoadly, Lauterbach & Johnson (F. R. Minrath, of counsel), for res’pt.
I think, therefore, the location was such as the act of 1875 authorized the company to adopt, and having been approved by the city engineer, the structure is lawful.
I think that the point that the whole capital stock is not shown-to have been subscribed, and the ten per cent thereon paid in cash, is not well taken. The petitioner succeeded to the rights of the old company by virtue of the foreclosure. Chapter 480 of the-Laws of 1874 authorized the reorganization of corporations of railroads sold under foreclosure, and for the formation of corporations and the issue of stock and securities according to the plan of re-organization ; stock issued in accordance with such plan is legally issued, and the evidence in this case shows that the whole capital stock was issued in accordance with the agreement of reorganization.
It is further objected that the extension of the petitioner’s station is required only because of its connection with the Union Elevated Railway, but it is the duty of all intersecting railroads to unite in forming intersections and connections and to grant, facilities therefor, § 28, subd. 6, general railroad act, and it has been expressly held that companies may acquire land outside of their proper routes solely for the purpose of making such connections. Matter of the Union Elevated Railroad, 113 N. Y., 275; 22 N. Y. State Rep., 792.
The prayer of the petitioner should be granted and commissioners of appraisal appointed.
Dykman, J.
The order appealed from should be affirmed on the opinion of the judge at special term, with costs and disbursements.
Barnard, P. J., and Pratt, J., concur.