Jones, J.,
dissenting. The question involved in this case is whether a proceeding to appropriate property instituted in an insolvency or probate court can be defeated by an attempt of the landowner to show that the corporation had no legal existence, and that the condemnation proceedings were being conducted to secure a right of way for another corporation; in short, as I take it, whether such insolvency or probate court is vested with jurisdiction in the nature of quo warranto to try either the legal existence of the corporation or its abuse of the franchise of eminent domain.
I fully agree with the majority opinion that a “dummy” corporation can have no existence under our laws, and that if a corporation abuses its franchise in the method claimed the corporation may be ousted from its franchise for its abuse. But this cannot be done in an appropriation proceeding be *183 fore a court of limited jurisdiction. The only authority for that purpose lies in the statute invoking the jurisdiction of a court in quo warranto on behalf of the state.
The legality of the organization of the plaintiff corporation, its failure to agree with the owner of the land sought to be appropriated and the regularity of its organization were proven in the insolvency court. As stated in the majority opinion:
“In this case the formal details, such as the'j preparation and filing of the articles of incorpora-1 tion, the signing of waivers of notice, the opening! of books of subscription, the filing of a certificate! of subscription with the secretary of state, the) waiver of notice of stockholders’ meeting and the) election of directors, are all set out in the minute] book.”
After the original record and plaintiff in error’s brief were filed in this court, the defendant in error filed a supplemental record, consisting of more-than seventy printed pages, setting forth the organization, by-laws and minutes, together with a resolution asserting the necessity for the condemnation of the land in question. The record shows affirmatively that ten per cent, of the stock subscribed was paid in according to law. Having thus established the legality of its existence, according to the corporate acts of this state, the plaintiff in the insolvency court was entitled to the exercise of the franchise of eminent domain when it proved the corporation was legally organized -by the election of directors and the inability to agree with the owner of the property. Powers v. The Hazelton *184 & Letonia Ry. Co., 33 Ohio St., 429; The Ashtabula & New Lisbon Rd. Co. v. Smith, 15 Ohio St., 328; State, ex rel., v. Insurance Co., 49 Ohio St., 441; The Queen City Telephone Co. v. City of Cincinnati, 73 Ohio St., 64.
Counsel for the landowner in the insolvency court attempted to prove that the company was a “dummy” corporation and never obtained a legal existence; that its ulterior motive was to use its corporate franchise for the purpose of exercising the right of eminent domain in behalf of another. In the case of State, ex rel. Attorney General, v. Taylor et al., 25 Ohio St., 279, an attack was made upon the corporate existence because of a secret, underlying motive to abuse its corporate power in not complying with the state law. On page 282 Welch, J., said:
“The question is, does the fact of such secret intention, and the subsequent carrying of that intention into execution, render the proceeding of incorporation a nullity, so that the corporation never obtained a legal existence. We answer the question in the negative. The secret intention of the parties is not by the law made an element in their organization. If their organization was in accordance with the statutory requirements, the lawfulness of their intention must be presumed. The company having organised in all respects in conformity with the laws of Ohio, with its office and place of corporate business in the state, thereby became and was a legal corporation of Ohio, and remains such until dissolved by act of the legislature, by its own voli *185 tion, or by a-proceeding in quo warranto against the corporation itself.”
The only method in which to test the legality of the corporate existence or the abuse of a franchise is by a proceeding brought in the name of the state under Section 12304, General Code, which provides that such action may be brought against the corporation:
“1. When it has offended against a provision of an act for its creation * * * .
“4. When it has misused a franchise, privilege, or right conferred upon it by law, * * * or has exercised a franchise, privilege, or right in contravention of law.”
It must be conceded that the right of eminent domain is a franchise granted to a corporation by the state. A franchise is usually defined as a right or privilege granted by the state which is not ordinarily enjoyed in common by the citizens generally. As stated in the case of Knoup v. The Piqua Bank, 1 Ohio St., 603, 615:
“The right to construct a road over the lands of private citizens, without their consent, is á sovereign right: it is the right, so called, of eminent domain. Whenever that right is delegated to a corporation or an individual, by an act of the general assembly, the corporation or individual has a franchise of eminent domain.”
Or, as stated by Mr. Justice Bradley in the case of California v. Central Pacific Rd. Co., 127 U. S., 1, 40:
“No private person can establish a public highway, or a public ferry, or railroad, or charge tolls *186 for the use of the same, without authority from the legislature, direct or derived. These are franchises. No private person can take another’s property, even for a public use, without such authority; which is the same as to say, that the right of eminent domain can only be exercised by virtue of legislative grant. This is a franchise.”
The attempt of counsel for plaintiff in error in the insolvency court, in their collateral attack upon the existence of the corporation and the ulterior motive alleged, was nothing less than an indirect attempt to invoke the jurisdiction of that court in disregard of the statute which provides that the only method by which that may be done is by action in quo warranto in the name of the state. The evidence tendered and refused by the insolvency court was offered as tending to prove that the corporation had no legal existente; that its stockholders and directors were mere dummies in the formation of the corporation. That contention is again met by Section 12303, General Code, which provides that an action in quo warranto may be brought in the name of the state, “3. Against an association of persons who act as a corporation within this state without being legally incorporated.”
If this proof were used for the purpose of showing that these parties were usurping corporate functions, and the corporation was not in fact legally organized, then, under that section of the code, the action should have been brought against the parties themselves who were acting under an illegal incorporation. ' Before that question could be tested *187 the parties--in interest would have to be brought into court, but by a proper proceeding, for the reason that it has been held in this state that it is not sufficient that the corporation itself be made a party, but that the parties organizing the corporation must themselves be a party to the action, and that that action must be in quo warranto. As stated in the syllabus of State, ex rel. Attorney General, v. The Cincinnati Gas Light & Coke Co., 18 Ohio St., 262:
“Where the franchise to be a corporation is intended to be drawn in .question, the proceeding should, under our statutes, be against the individuals who usurp such franchise.”
And the learned judge, in his opinion in that case, at page 286, quoting from 4 Cowen’s R., 97, said:
“If the information be for using a franchise by a corporation, it should be against the corporation. If for usurping to be a corporation, it should be against the particular persons.”
This principle was later announced in the case of State, ex rel. Attorney General, v. Taylor et al., supra. It cannot be denied that if the corporation in question was endeavoring to condemn property for another this would be an abuse of its franchise. Indeed, this is conceded by counsel for the landowner, for in their brief they say:
“The question whether a corporation is misusing its franchise may be one for the state to raise, but, we submit, the right to make the appropriation of the land of a citizen may be raised by the citizen, and determined by.the court in a proceeding instituted by the corporation to appropriate his land,”
*188 It is there intimated that there is a concurrent remedy in the probate court for the correction of this corporate abuse. But the constitution of Ohio has failed to confer jurisdiction in quo warranto upon the probate court. That court is a court of limited jurisdiction, with only the powers granted it by the legislature. If the position of the plaintiff in error be conceded, then the probate court has substantially jurisdiction in quo warranto, a jurisdiction which has been conferred only upon the courts of appeals and the supreme court of the state. That a probate judge in an appropriation proceeding has not this power is supported by both reason and authority. Let us assume the contingency that a corporation is endeavoring to construct its road by proceedings in appropriation from one end of the state to the other. If the contention claimed were to apply, then it would be possible for the probate court of each county, within the range of counties through which the road had to pass, to determine whether the corporation had no legal existence or was misusing its franchise in attempting to condemn property for a friendly corporation. Each local probate judge, in his own county, might have the same facts presented to determine whether or not there was a corporate abuse, and a different decree in the various counties might result from the evidence, and yet one single local judge, by a decree finding against the corporate existence or that there was an abuse of power, might destroy the franchise and make the whole route ineffective. Or, in a single county, where the land of several individuals may be separately condemned and where *189 similar defenses are set forth as are relied on in this case, it is possible that one landowner may succeed and another fail. This situation cannot develop in an action brought by the state. Furthermore, it must be conceded that an action in quo warranto brought on the relation of a private individual is not a bar to a similar action brought by the state, because the state is not a party thereto. State, ex rel. Attorney General, v. The Cincinnati Gas Light & Coke Co., supra.
Or let us assume a- conflict of jurisdiction between the local probate court of some county and a higher court having original jurisdiction in quo warranto. Since the state is not a party to the proceeding in appropriation and is not bound thereby, let us assume that the local court decreed against the right of eminent domain and that the court of higher jurisdiction, in an action by the state, decreed in its favor upon the same facts. That is what was actually done in the present case. It Is admitted in the majority opinion that after the judgment in the insolvency court a suit in quo warranto was brought by the attorney general in the court of appeals of Franklin county against this corporation for a judgment of ouster, upon the same state of facts offered as a defense by counsel for the landowner in this case, and that court ordered a judgment of ouster, but the order provided that it should be without prejudice to the rights of the defendant (corporation) to defend the appropriation suits already pending, of which this was one. Both by principle and authority the right to test the question of legal existence and *190 corporate abuse should of necessity remain in the state from which the franchises were obtained. A decree upon those questions in an action brought by the state in quo warranto settles the questions at issue for each individual in the state and would not require separate action upon the part of every individual whose land was sought to be condemned. It may be conceded that if the proof tendered were sufficient to show that there was a wrong committed, either by the association of persons forming the corporation as a “dummy,” or by the corporation itself in the attempt to misuse the franchise, there is a remedy. But that quo warranto is The only remedy by which such a wrong can be reached has early been decided by the courts of this state. In the case of State, ex rel. Linley, v. Bryce, 7 Ohio, part 2, 82, Lane, J., cited a large number of authorities in support of the following principle:
“It is well settled that neither a neglect to exercise corporate powers, nor even an abuse of them, ipso facto, works a forfeiture of the franchise; that the corporation subsists until the forfeiture be ascertained and declared by a-competent tribunal, in a judicial proceeding instituted for that purpose against it by government.”
That case involved a controversy over private rights, as did also the case of Webb v. Moler, 8 Ohio, 548, in which the defendant properly asked the following instruction to the jury:
“That no non-user by said corporation of its corporate franchises would operate as a forfeiture of such franchises, unless such default and for *191 feiture had first been judicially determined in a legal proceeding instituted for that purpose.”
And in that connection the judge delivering the opinion said:
“No proposition is more thoroughly established, than that the franchises of a corporation cannot be forfeited without a judgment either on scire facias or quo zvarranto.”
The following case was cited against the principle involved: Gas-light Co. v. Zanesville, 47 Ohio St., 35. That case followed and depended upon its associate case of Zanesville v. Gas-light Co., 47 Ohio St., 1, where it is held in the second proposition of the syllabus:
“Whenever an incorporated company, in any action, asserts, a right against another person based upon an assumed franchise or power, the person against whom the right is so asserted may, as a defense, deny the existence of such franchise or power.”
That was an action in injunction and not for appropriation. The case decided only that if a corporation attempts to exercise an assumed franchise, a defendant may set up as a defense its nonexistence. An examination of that case will readily show that the corporation attempted to act without any authority whatever; that it had no franchise, but acted, through an invalid ordinance, under an assumed franchise or power. There was no legal authority in that case to exercise the power claimed, and the relevancy of Judge Minshall’s remarks is fully explained on page 29 of the former case, wherein he says:
*192 “It is open, at all times, to the person against whom a corporation may claim the right to exercise a power, to call the power in question, and to require the company to show the existence of the power, by deriving it either from the plain terms of its charter or the statute under which it is organized.”
There is no claim made in the instant case that the corporation has not the power of eminent domain. The Zanesville case would be apposite if some private corporation attempted to exercise the franchise of eminent domain, as if some corporation organized for manufacturing or dealing in real estate were endeavoring to assume the franchise of eminent domain. This is the only principle to which the Zanesville case applies.
On the trial before the insolvency court there was a mass of testimony relating to the character of the books kept by the plaintiff company and the nature of stock subscriptions, but there was no dispute that the statutes in relation to the formation of corporations had been fully complied with in every regard, including the election of directors and the payment of the ten per cent, subscription on stock. From all these questions it must be presumed that the lower courts found that the corporation was duly and legally organized, and on questions of fact this court does not ordinarily pass. The legal propositions stated by the .record were, viz.: That it was not organized in good faith in the first instance, and that its motive was to condemn the property for The Northern Ohio Traction Company. In the late case of Louisville & N. Ry. Co. v. *193 Western Union Telegraph Co., reported in 110 N. E. Rep., 70, the supreme court of Indiana held in the syllabus:
“In proceedings by a telegraph company to condemn. a right of way for its poles and wires longitudinally along a railroad right of way, the road could not question the corporate existence of plaintiff by alleging it had been organized as a domestic corporation, solely to acquire the right of way to assign it to a foreign corporation, to be used by the latter in the construction and operation of its lines, a means by which the foreign corporation could evade the laws of the state not extending the right of eminent domain to foreign corporations.”
In the disposition of that case, the court in its opinion said:
“By the seventh objection appellant challenges the right of appellee company to condemn, upon the ground that it is not a good-faith corporation. It is charged that appellee is not engaged in the operation of telegraph lines, and that it is not the purpose of the appellee to engage in that business, or to use t'he right of way sought to be acquired in this proceeding for that purpose, but that appellee seeks to acquire the right of way in question solely for the purpose of assigning it and turning it over to the Western Union Telegraph Company of New York, to be used by the latter company in the construction and operation of its lines. Appellant asserts that appellee company was organized, and that this proceeding was brought for the purpose of evading by indirection the laws of this state, which *194 do not extend the right of eminent domain to foreign corporations. It has been repeatedly held that a defendant cannot question the corporate existence of plaintiff collaterally in a proceeding such as this. This can be done only by the state in a direct proceeding for that purpose.”
The supreme court of Illinois, in the case of Thomas v. St. L., B. & S. Ry. Co., 164 Ill., 634, held in the syllabus:
“Whether a corporation retaining its franchise is improperly exercising the same, or has entered into any illegal combination which may affect its franchise, is a question between the corporation and the state, and cannot be raised by a defendant in a proceeding to condemn.”
This case also was an appropriation proceeding, in which the landowner attempted to show control over the appropriating company by another corporation, and in which it was held that any illegal arrangement entered into by the appropriating compány affecting its franchise could only be raised by the people in a proceeding instituted for that purpose.
The supreme court of Missouri, in the case of Kansas & Texas Coal Ry. Co. v. Northwestern Coal & Mining Co., 161 Mo., 288, held in the syllabus:
“The power of a regularly organized and chartered railroad company, chartered for The purpose of constructing and operating a railroad for public use in the conveyance of persons or property,’ to condemn land for a right of way for a railroad track, can not be drawn in .question in a condemnation proceeding. Nor can it be shown in such pro *195 ceeding, which is a collateral one, that a company chartered for such a purpose, has the same directors and stockholders as a private business corporation, and that its proposed right of -way is to be used solely in the interest of such private business (in this case, coal mining), nor that the private company furnished the money with which the railroad is to be constructed. No evidence to show such facts is competent, except in a direct proceeding to attack its charter.”
The supreme court of North Carolina, in Holly Shelter Rd. Co. v. Newton, 133 N. C., 132, a similar case involving proceedings to condemn, held that the charter of a corporation in such a proceeding could not be collaterally attacked as being fraudulent. The contention of the landowner in that case was that the charter of the railroad was a fraud, and that its real object was not the conveyance of freight and passengers, according to its charter, but merely to operate a lumber road. The supreme court held that if such were the case it would be a fraud upon the public to obtain the right of condemnation by such evasion, that the charter could not be collaterally attacked in a condemnation proceeding, but that a direct proceeding on behalf of the state should be brought to annul its charter:
In the case of In re Brooklyn El. Rd. Co., 11 N. Y. Supp., 161, which was also a proceeding to condemn, the landowner attempted to show in defense of the proceeding that, the railroad company had failed to complete its road according to the laws of the state, thereby forfeiting its rights acquired under the terms of the act. The court held that the *196 company could not be attacked for its default in condemnation proceedings instituted by it, but that the state must intervene. That case was affirmed by the New York court of appeals in 125 N. Y., 434.
The case of Denver Power & Irrigation Co. v. D. & R. G. Rd. Co., 30 Colo., 204, is also a case involving the appropriation of property. After the case had reached the supreme court of Colorado, the attorney general of that state attempted to intervene in the name of the people to determine whether or not the railroad company had forfeited its franchise, but the court held that it had no such right, as that would be equivalent to changing the condemnation proceeding to that of quo warranto.
The case of Tibby Bros. Glass Co. v. Pennsylvania Rd. Co., 219 Pa. St., 430, is peculiarly in point. The Pennsylvania Railroad Company brought a proceeding to condemn the property of the owner. Thereupon the owner filed a bill in equity to restrain the condemnation because of its violation of the act of its incorporation and also of the constitution of that state denying the right of parallel and competing companies to condemn. The supreme court of Pennsylvania held that this could be done only by the state itself, in an action in quo warranto, and the language of the judge delivering the opinion is pertinent, apt and buttressed by legal logic denying the right of the landowner to invoke the jurisdiction of the court in a condemnation proceeding. The authority claimed by the landowner in that case was; conferred by an act which provided that at the instance of private par *197 ties an inquiry might be made into the existence and extent of franchises conferred by corporate charters, and especially that of one railroad controlling a parallel competing line, which issue should be, upon demand, submitted to a jury; and the court said that if this were permitted to be done by individual landowners all along the line the confusion resulting therefrom would be “worse confounded,” in that separate local courts in the various actions might come to different conclusions which would result in one case protecting the land from condemnation and the other not; that all along the line of the Pennsylvania Railroad Company at certain points the contingency might arise by which a finding would result that the railroad company possessed the right of eminent domain, while in others it did not, and that the only method by which the question could be raised would be in a single proceeding by the commonwealth in order to determine once for all whether the condemning railway had the right to condemn from one end of the state to the other.
So also, in the case of Brown v. Calumet River Ry. Co., 125 Ill., 600, a condemnation proceeding, the court held in the syllabus:
“In a proceeding by a railway company to obtain a right of way, the county court has no jurisdiction to determine whether or not the petitioner is a bona fide corporation, within the meaning and spirit of the law. That can be done only on quo warranto.”
The same principle is supported by the supreme court of Illinois in the case of Western Union Telegraph Co. v. Louisville & N. Rd. Co., decided October 27, 1915, and reported in 110 N. E. Rep., 583.
*198 These are but a few of the cases in which it has been held that questions of the character attempted to be raised by this record cannot be raised in proceedings to condemn before the local courts.
On the other hand counsel for plaintiff in error have not cited a single case where the authorities support the view that testimony of the character offered by the landowner in this case is competent in a proceeding to condemn, especially where the corporation has become one de jure, by its organization and selection of directors, under the authority of Powers v. The Hazelton & Letonia Ry. Co. and other cases cited, supra. Therefore the judgment of the lower cotirts should have been affirmed.